**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JOHNSON & JOHNSON VISION
CARE, INC.,

        Plaintiff,

vs.

        Case No. 3:03-cv-800-J-99TEM
        Case No. 3:04-cv-1297-J-32TEM
        Case No. 3:05-cv-135-J-32TEM

CIBA VISION CORPORATION,

        Defendant.

**ORDER**

Plaintiff Johnson & Johnson Vision Care, Inc. ("J&J"), and defendant CIBA Vision Corporation ("CIBA") compete in the manufacture of ophthalmic goods. J&J has filed these three cases under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking a declaration of non-infringement, unenforceability, and invalidity with respect to five CIBA-owned patents ("Nicolson patents").[1] The primary difference in the cases is the J&J product involved. The first case, 3:03-cv-800-J-32TEM, involves a spherical-shaped silicone hydrogel contact lens product made with galyfilcon A and marketed under the ACUVUE® ADVANCE™

---

[1] Specifically, J&J seeks a declaration with respect to United States Patent Nos. 5,760,100, 5,776,999, 5,789,461, 5,849,811, and 5,965,631. CIBA states that these patents cover technology used in the development of its silicone hydrogel contact lenses marketed under the Focus® NIGHT & DAY® name that can be worn continuously for up to 30 days.

with HYDRACLEAR™ name ("Spherical Lens Case").  The second case, 3:04-cv-1297-J-32TEM, involves the same type of lens product, but toric-shaped to correct for astigmatism ("Toric Lens Case").  The third case, 3:05-cv-135-J-32TEM, involves what J&J calls its "newest silicone hydrogel contact lens product - - the Phoenix contact lens" made with senofilcon A ("Phoenix Lens Case").[2]  Now before the Court are CIBA's motions to dismiss the Toric and Phoenix Lens Cases in which CIBA argues that the Court does not have jurisdiction because there is no actual controversy between the parties.[3]  Also before the Court is J&J's unopposed motion to consolidate the three cases in the event they all go forward.

## I. **Motions to Dismiss**

The Declaratory Judgment Act provides:

In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).  The purpose of the Act is to allow a party "who is reasonably at legal risk because of an unresolved dispute ... to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other

---

[2] Phoenix Lens Case, 3:05-cv-135-J-32TEM, Doc. 1 ¶3.

[3] Relevant to the present motions to dismiss, the Court previously denied CIBA's similar motion to dismiss the Spherical Lens Case.  See Spherical Lens Case, 3:03-cv-800-J-32TEM, Doc. 40.

side." Capo, Inc. v. Dioptics Med. Prods., Inc., 387 F.3d 1352, 1354 (Fed. Cir. 2004)(quotation omitted).

In accordance with Article III of the United States Constitution, the Act requires an actual controversy between the parties before a federal court may exercise jurisdiction. Teva Pharm. USA, Inc. v. Pfizer Inc., 395 F.3d 1324, 1331 (Fed. Cir. 2005). The determination of whether an actual controversy exists depends on "whether the facts alleged, under all the circumstances, show that there is substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (quotations omitted). The determination is a question of law. MedImmune, Inc. v. Centocor, Inc., 409 F.3d 1376, 1378 (Fed. Cir. 2005).

The Federal Circuit has developed a two-element test to determine whether there is an actual controversy. Teva, 395 F.3d at 1332. The plaintiff must establish by a preponderance of evidence that, at the time it filed the complaint: (1) the defendant had made an explicit threat or acted in a way that made the plaintiff reasonably apprehensive, on an objective basis, that it may face infringement litigation; and (2) the plaintiff had engaged in present activity that could constitute infringement or had taken concrete steps with the intent to conduct such activity. Id.; MedImmune, 409 F.3d at 1379. In its motions to dismiss, CIBA argues that

3

J&J cannot establish the first element.[4]

There are two parameters to consider in determining whether a plaintiff has established that the defendant's actions have made the plaintiff reasonably apprehensive that it may face infringement litigation: less is needed than a defendant's express statement that it is going to sue the plaintiff for infringement; more is needed than just notice of an adversely held patent. Capo, 387 F.3d at 1355. When the defendant's conduct falls in between these parameters, the Court must engage in a fact-intensive inquiry, looking at the totality of the circumstances. Id. Such is the case here, so the Court will turn to the facts presented in affidavits and exhibits filed by the parties.[5] The abridged version follows.

For many years, the parties engaged in on-going negotiations over various patent issues, including whether each was infringing on patents owned by the other and whether they should resolve possible infringements through alternative dispute resolution, licensing agreements, or covenants not to sue. The negotiations continued slowly, with weeks and sometimes months passing

---

[4] CIBA does not contest, and the Court finds, that J&J has established the second element in both cases under consideration.

[5] It is proper to consider the parties' affidavits and exhibits without converting the motions to dismiss into motions for summary judgment because the motions to dismiss raise a subject matter jurisdiction issue. See Vink v. Hendrikus Johannes Schijf Rolkan N.V., 839 F.2d 676, 677 (Fed. Cir.1988). The Court did not find a need to conduct an evidentiary hearing since the affidavits and exhibits do not conflict in a material way.

4

between positions and responses.

Initially, the negotiations focused on certain J&J patents in connection with a new contact lens product that CIBA was planning to introduce under its DAILIES® name, and certain CIBA patents in connection with a new color contact lens product J&J was planning to introduce under its ACUVUE® COLOURS™ name. Then, at a September 2002 in-person meeting between J&J counsel and CIBA counsel to attempt to resolve the lingering negotiations, J&J counsel inserted the Nicolson patents into the negotiations by expressing an interest in licensing under them. CIBA counsel responded that CIBA would always consider reasonable licensing arrangements, but was not particularly desirous of licensing under the Nicolson patents. CIBA counsel took the position that the Nicolson patents would cover any true extended wear product that CIBA could envision.

Following the meeting, CIBA counsel sent J&J counsel a proposal under which CIBA would grant J&J a global covenant not to sue on CIBA's color-related patents in exchange for a global covenant not to sue on the J&J patents. This proposal included statements that CIBA "no longer consider[s] arbitration as a realistic means for resolving the issues in this dispute" and "I hope we can resolve this matter amicably, but if this approach does not work, I am truly at a loss for

further creative options."[6]  J&J counsel responded that J&J did not want to engage in costly litigation, and countered with a proposal that included an offer to pay CIBA a royalty for use of the Nicolson patents.[7]  Evidently vexed by J&J's counter proposal, CIBA counsel sent J&J counsel a letter in December 2002 in which he stated emphatically that CIBA had no desire to license its continuous wear lens technology; incongruously set forth terms that would establish a floor for continuing negotiations for such licensing; expressed frustration over the negotiations to-date; threatened that if the parties proceeded to litigation, CIBA would seek an injunction that takes and keeps J&J off the market until the Nicolson patents expire; then concluded with a query as to whether J&J would continue negotiations without involving the Nicolson patents.  CIBA thereafter made some effort to negotiate a certain royalty for licensing of the Nicolson patents, but J&J immediately rejected it as exorbitant and economically unfeasible.  As suggested by CIBA counsel's in the letter, the parties moved forward with negotiations without involving the Nicolson patents.

Negotiations regarding the Nicolson patents resurfaced in May 2003 when

---

[6] Spherical Lens Case, 3:03-cv-800-J-32NWH, Doc. 31, Declaration of R. Scott Meese, Tab L.

[7] This offer was followed by an e-mail from Johnson & Johnson Company Group Chairman, Gerald Ostrov, to CIBA's Chief Executive Officer, Joseph Mallof, outlining a proposal for royalty rates and terms for an arbitration over patent rights.

CIBA counsel sent J&J counsel a copy of a claims construction ruling involving the Nicolson patents in a case brought by CIBA against Bausch & Lomb, Inc. ("B&L"), in the Northern District of Georgia, 2:99-cv-0034-RWS, and requested samples of J&J's extended wear lenses.  J&J counsel responded with its position that its extended wear lenses did not infringe the Nicolson patents, expressed J&J's continued preference for alternative dispute resolution over litigation, invited CIBA to make a new licensing proposal for the Nicolson patents, but declined to send samples.  CIBA did not respond and, in September 2003, J&J filed the Spherical Lens Case.

CIBA immediately moved to dismiss all but one count of the Spherical Lens Case,[8] arguing that the Court did not have jurisdiction because of the absence of an actual controversy between the parties.  The Court denied the motion in April 2004, finding most compelling towards the issue of J&J's reasonable apprehension of infringement litigation the December 2002 letter from CIBA counsel to J&J counsel.  In June 2004, CIBA answered the complaint and asserted infringement counterclaims against J&J with respect to three of the five Nicolson patents.[9]  It

---

[8]  The Spherical Lens Case includes J&J's claim that CIBA infringes on a J&J patent relating to contact lens packages.  This claim was not included in the motion to dismiss.

[9]  In the Spherical Lens Case, CIBA has asserted infringement counterclaims against J&J with respect to United States Patent Nos. 5,760,100, 5,789,461, and 5,849,811, but not with respect to United States Patent Nos. 5,776,999 and

also filed a nearly identical case against J&J in the Northern District of Georgia where the case between CIBA and B&L was pending.[10]

In December 2004, while the Spherical Lens Case and Northern District of Georgia case were proceeding, J&J filed the Toric Lens Case.  In the complaint, J&J alleged that it had a reasonable apprehension of being sued for infringement by CIBA based on: (1) the aforementioned negotiations between J&J and CIBA; (2) the counterclaims asserted in the Spherical Lens Case; (3) CIBA's filing of the Northern District of Georgia case against J&J; (4) CIBA's filing, through its wholly-owned subsidiary, of an infringement case against B&L in the District of Delaware in which CIBA obtained a permanent injunction to keep B&L from manufacturing or selling its extended wear silicone hydrogel lenses;[11] and (5) J&J's understanding of CIBA's position that any lenses that have an oxygen transmissibility value of at least 85 barrers/mm measured by the polarographic method, which would include

---

5,965,631.  In the Phoenix Lens Case, CIBA very recently has asserted infringement counterclaims against J&J with respect to United States Patent Nos. 5,849,811 and 5,965,631.  The Court does not consider the Phoenix Lens Case counterclaims in its analysis of the present motions to dismiss.

[10]     The Northern District of Georgia dismissed CIBA's case against J&J on January 4, 2005 in light of the three cases presently before this Court.  See Spherical Lens Case, 3:03-cv-800-J-32TEM, Doc. 78-1.

[11]     The case referenced by J&J, Wesley Jessen Corp. v. Bausch & Lomb, Inc., 209 F.Supp.2d 348 (D. Del. 2002), addressed United States Patent No. 4,711,943, which relates to a monomer for making contact lenses and contact lens materials.

8

the lens product at issue in the Toric Lens Case, infringe the Nicolson patents.

Like in the Spherical Lens Case, CIBA moved to dismiss the Toric Lens Case, arguing that the Court does not have jurisdiction because of the absence of an actual controversy between the parties.  Before the Court could rule on the motion to dismiss, J&J filed the Phoenix Lens Case.  The complaint borrowed from the Toric Lens Case complaint, alleging the same bases for J&J's position that it had a reasonable apprehension of being sued for infringement by CIBA.  Like the Spherical and Toric Lens Cases, CIBA moved to dismiss the Phoenix Lens Case.[12]

In its motions to dismiss the Toric and Phoenix Lens Cases, CIBA adopts many of the same arguments that it made in support of its motion to dismiss the Spherical Lens Case.  In fact, with respect to the Toric Lens Case, CIBA counsel recognized at a January 2005 hearing that, due to the similarity of J&J products involved, any motion to dismiss the Toric Lens Case likely would meet the same fate as its motion to dismiss the Spherical Lens Case.[13]  However, with respect to

---

[12] In the Phoenix Lens Case, CIBA recently filed a motion for temporary restraining order to prevent J&J from launching in the United States the lens product at issue.  The motion remains pending, with a hearing scheduled for August 9, 2005.  The Court does not consider the motion for temporary restraining order in its analysis of the present motions to dismiss.

[13] According to CIBA counsel: "I expect that we may file also a motion to dismiss on jurisdictional grounds as to preserve our rights for appeal.  But it will be frankly the same - - the same subject matter of the motion that you've already ruled on with respect to the first case . . . I'm assuming [the Court will rule the same way] [s]o we're just doing it to preserve our rights ... ."  Case 3:03-cv-800-J-

the Phoenix Lens Case, CIBA counsel argued at a May 2005 hearing that it was an entirely "different kettle of fish."[14]

In the interests of judicial economy and consistency, the Court incorporates by reference and adopts its order denying CIBA's motion to dismiss the Spherical Lens Case with respect to the same arguments made by CIBA in all three cases.[15] The Court will address separately only the additional four arguments made in the present motions to dismiss the Toric and Phoenix Lens Cases.

First, CIBA argues that its compulsory counterclaims in the Spherical Lens Case and its filing of the Northern District of Georgia case, all involving CIBA's allegation that J&J is infringing three of the five Nicolson patents, were merely defensive actions taken by CIBA and therefore should not add weight to J&J's position that it had an objectively reasonable apprehension of infringement litigation at the time it filed the Toric and Phoenix Lens cases.  J&J responds that CIBA's actions add weight to its position because they reflect a belief by CIBA that J&J is infringing three of the five Nicolson patents and a willingness to take affirmative action on that belief.

---

32NWH, Doc. 71, rough transcripts from 01/11/2005 hearing at 11:16-25, 12:1.

[14]   Spherical Lens Case 3:03-cv-800-J-32NWH, Doc. 79, rough transcripts from 05/11/2005 hearing at 7:17-18.

[15]   See Spherical Lens Case, 3:03-cv-800-J-32TEM, Doc. 40.

The Court finds that CIBA's compulsory counterclaims and Northern District of Georgia case, together with CIBA's B&L case, show at the very least that CIBA has engaged in a course of protecting its Nicolson patents from potential infringement.  Though not dispositive of the issue of J&J's reasonable apprehension, this course of action has at least some relevancy to the reasonable apprehension analysis.  See Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 956 (Fed. Cir. 1987)(concluding that declaratory plaintiff easily could infer that patentee would bring patent infringement litigation against it based on prior state court litigation showing that patentee had engaged in course of conduct reflecting a willingness to protect its technology).

Second, CIBA argues that its failure to raise compulsory counterclaims in the Spherical Lens Case and subsequent Northern District of Georgia case with respect to the two remaining Nicolson patents shows the lack of an actual controversy as to them.  J&J counters that this argument ignores the history of the negotiations between the parties, during which CIBA referred to the Nicolson patents collectively and made clear its opinion that any contact lens with a relatively high oxygen transmissibility capable of extended wear usage would infringe all of the Nicolson patents.  J&J further counters that just because CIBA has not yet asserted infringement with respect to two of the Nicolson patents does not mean that it is not planning to do so.  J&J points out that CIBA reserved the

11

right to amend its interrogatories in the Toric Lens Case in the event that any other claims are to be asserted, and has not agreed to a covenant not to sue to ensure J&J that it will not claim infringement with respect to the two remaining Nicolson patents.

The Federal Circuit recently touched on the relevancy of a Declaratory Judgment Act defendant's failure to raise a compulsory counterclaim before trial. See Capo, 387 F.3d at 1352. Capo involved an appeal of a district court's decision to decline to exercise jurisdiction over a patent declaratory action. Id. at 1353. In so declining, the district court considered the fact that the defendant had not asserted compulsory counterclaims. Id. at 1356. In concluding that the district court clearly erred in its interpretation of its discretion by giving weight to the defendant's failure to assert a compulsory counterclaim, the Federal Circuit concluded that the defendant could not "avoid a declaratory action by refusing to file the counterclaim." Id. at 1356-57. The Court noted that the magistrate judge had extended the time for filing a counterclaim, the plaintiff had provided the defendant with product samples during discovery, and the defendant had indicated in discovery responses that it had no opinion with respect to infringement "at this time." Id. at 1356.

Capo applies here. CIBA's failure to bring a counterclaim with respect to two of the Nicolson patents does not establish that there is no "actual controversy"

with respect to them.  CIBA has not foreclosed its opportunity to move to file additional infringement counterclaims and, given the early state of the litigation, it may still seek to do so.[16]

Third, relying on the axiom that infringement requires a showing that the accused product meets all of the elements of the asserted patent claims, CIBA argues that J&J must establish more than that its products meet just one of the numerous elements of the Nicolson patents for J&J to establish that its apprehension of infringement litigation was reasonable.  J&J responds that any such requirement would be contrary to Federal Circuit law and would lead to an absurd result of having a plaintiff seeking a declaration of non-infringement to establish infringement.  J&J points out that declaratory judgment plaintiffs are free to deny infringement and routinely do so.

The Court agrees with J&J that it is not required to establish that its products meet or arguably meet some or all of the elements of the Nicolson patents to establish that it had a reasonable apprehension of infringement litigation.  As the Federal Circuit explained, "It is at best incongruous to require that one seeking a declaration of *noninfringement* prove its process or product is the 'same as' or 'identical' to the patented process or product. ...  To require declaratory judgment

---

[16]    The Court is awaiting resolution of these motions to dismiss before entering a case management order.

13

plaintiffs to allege or show that their products or processes *are* infringements, or are 'the same', would limit the judgments they seek to declarations of invalidity or unenforceability." Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 738, 738 n.10 (Fed. Cir. 1988).  It was sufficient for just one party, in this case CIBA, to assert infringement through its actions during and after negotiations. Id.; see also International Med. Prosthetics Research Assocs. v. Gore Enter. Holdings, Inc., 787 F.2d 572, 575 (Fed. Cir. 1986)("Declaratory judgment plaintiffs who have been accused of infringement or threatened with suit are at full liberty to deny infringement and often do. ... It is difficult to conceive of a justiciable controversy when *neither* party says there is any possibility of infringement, yet no court has held that a declaratory judgment plaintiff must always *admit* infringement. ...  What counts is whether an actual controversy exists.").

Fourth and finally, CIBA argues that J&J could not have had a reasonable apprehension of infringement litigation when it filed the Phoenix Lens Case in 2005 based on negotiations that took place years earlier and never specifically referenced the Phoenix product.  J&J responds that its reasonable apprehension was based on statements made during those negotiations indicating CIBA's belief that any lens product with relatively high oxygen transmissibility - - and thus capable of extended wear - - falls within the scope of the Nicolson patents, combined with the fact that CIBA brought counterclaims in the Spherical Lens

14

Case and the Northern District of Georgia case involving a J&J product that has a lower oxygen transmissibility than the J&J product involved in the Phoenix Lens Case.  J&J cites cases from other district courts holding that threats of litigation do not necessarily grow stale with the passage of time.

The Court concludes that J&J has established a reasonable apprehension of infringement litigation at the time it filed the Phoenix Lens Case.  The Court agrees with J&J that the negotiations that led to J&J initially filing the Spherical Lens Case, and statements made by CIBA counsel therein, have equal applicability to the Phoenix Lens Case.  This, combined with CIBA's counterclaims and Northern District of Georgia cases, establishes that an "actual controversy" exists.  See Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 99-100 (1993)("A company once charged with infringement must remain concerned about the risk of similar charges if it develops and markets similar products in the future.").[17]

Though an "actual controversy" exists in the Toric and Phoenix Lens Cases, the Court has discretion to decline to accept a declaratory action, to be exercised in accordance with the Declaratory Judgment Act and the "principles of sound judicial administration." Electronics for Imaging, Inc. v. Coyle, 394 F.3d 1341,

---

[17]    The Court notes that the facts in these cases are markedly different from those in Bausch & Lomb Inc. v. CIBA Corp., 39 F.Supp.2d 271, 273-74 (W.D.N.Y. 1999), in which the district court dismissed B&L's declaratory judgment action for want of an actual controversy.

1345 (Fed. Cir. 2005)(quotations omitted).  Like the Spherical Lens Case, the Court will accept these cases.  Any judgment will clarify and settle the legal relations between J&J and CIBA and "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the cases." Capo, 387 F.3d at 1358 (citing Edwin Borchard, Declaratory Judgments 299 (2d ed. 1941)).

## II.   Unopposed Motion for Consolidation[18]

The Court finds that J&J's unopposed motion to consolidate these three cases in accordance with Federal Rule of Civil Procedure 42(a) should be granted because they involve the same parties, the same patents, and many of the same issues of fact and law.

## III.   Conclusion

For these reasons, it is hereby **ORDERED:**

1.   Defendant CIBA Vision Corporation's Motion to Dismiss  (Doc. 13) in the Toric Lens Case, 3:04-cv-1297-J-32TEM, is **DENIED**.

2.   Defendant CIBA Vision Corporation's Motion to Dismiss (Doc. 9) in the Phoenix Lens Case, 3:05-cv-135-J-32TEM, is **DENIED**.

3.   Plaintiff's Unopposed Motion for Consolidation (Doc. 86) in the Spherical Lens Case, 3:03-cv-800-J-99TEM, is **GRANTED.**  From the date of this

---

[18]   J&J represents that CIBA would have joined in the motion but for its pending motions to dismiss, and that CIBA agrees that consolidation is warranted if they are denied.

16

Order forward, all documents shall be styled with the three case names and numbers (as in this Order), but filed only in the Spherical Lens Case, 3:03cv-800-J-99TEM.  Per the parties' request, all non-resident attorneys admitted in any one of the three cases are hereby admitted to the consolidated case.

4. A case management order, based on the parties' June 10, 2005, Joint Motion for Entry of Amended Case Management and Scheduling Order (Doc. 85) in the Spherical Lens Case, 3:03-cv-800-J-99TEM, will be separately entered.

**DONE AND ORDERED** at Jacksonville, Florida on August 3, 2005.

TIMOTHY J. CORRIGAN
United States District Judge

p.
Copies to counsel of record